UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JUSTIN G.,

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:21-cv-01449-AR

OPINION AND ORDER

---

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Justin G. (his last name omitted for privacy) challenges the Administrative Law Judge's (ALJ) evaluation finding the medical opinions of Pamela Roman, Ph.D., and David Nguyen, M.D., unpersuasive; failing to identify specific, clear and convincing reasons for discounting his subjective symptom testimony; and improperly rejecting the testimony of two lay

witnesses without providing germane bases supported by substantial evidence in the record. The court agrees with plaintiff and therefore reverses and remands the Commissioner's decision.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on March 22, 2019, alleging disability beginning January 1, 2014. (Tr. 175.) His claim was initially denied on August 1, 2019, and again upon reconsideration on February 26, 2020. (Tr. 53, 63.) Afterwards, plaintiff filed for a hearing that was held before the ALJ on January 25, 2021. (Tr. 29.) At the hearing, plaintiff amended his alleged onset date to January 1, 2016. (Tr. 13.)

In denying plaintiff's applications for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined plaintiff has not engaged in substantial gainful activity since the amended alleged onset date. (Tr. 15.) At step two, the ALJ determined that he had the following severe impairments: bipolar disorder and anxiety disorder. (Tr. 15.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 16.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: understanding, remembering, and carrying out instructions is limited to performing simple and routine tasks, reasoning level 2 or

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

less; use of judgment is limited to simple work-related decisions; occasional interactions with supervisors, coworkers, and the general public; changes in the workplace setting limited to simple work-related decisions; and normal breaks could accommodate for time off-task. (Tr. 17.)

At step four, the ALJ determined that plaintiff can perform past relevant work as a laborer, general, and this work does not require the performance of work-related activities precluded by the plaintiff's RFC. (Tr. 22.) With the RFC in hand, the ALJ found at step five that plaintiff could perform his past relevant work as a laborer. (Tr. 22). The ALJ also found that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as hand packager, an automobile detailer, and electronics worker. (Tr. 23.)

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

\\\\\

\\\\\

\\\\\

## DISCUSSION

### A. *The ALJ Failed to Identify Specific, Clear and Convincing Reasons to Discount Plaintiff's Testimony*

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that he cannot engage in full time, competitive employment because of his mental health conditions, including bipolar disorder and anxiety. (Tr. 202.) In his view, anxiety and unpredictable mood swings caused by his bipolar disorder are exacerbated by stress and can change from moment to moment with little, if any, predictability. (Tr. 263, 277.) Plaintiff has a history of depression and suicidal thoughts, beginning with a hospitalization for attempted suicide in May of 2014. (Tr. 569.) That struggle with suicidal thoughts and depressive episodes, feelings of worthlessness, and his "intense" anxiety forced him to isolate from others. (Tr. 41, 44, 425-26.) Plaintiff was engaged in counseling after his suicide attempt but lack of

insurance and financial limitation caused him to stop. (Tr. 43, 424.) Plaintiff started taking Celexa but has since been moved to Abilify and lorazepam. (Tr. 404, 406, 400.)

At the hearing, plaintiff reported that he had been working part-time as a pizza delivery driver from 2016 to 2019, and then part-time at U-Haul. (Tr. 39.) Plaintiff explained that he was able to sustain this part-time work because his employers understood his mental health challenges and made accommodations specifically for him, including reducing his responsibilities so that he did not have to interact with people and giving him simpler, routine work. (Tr. 40.) On his bad days, plaintiff will miss work at least a couple times a month, and his supervisor will work around him. (Tr. 41.) During his bad days, plaintiff reports not being able to trust his own needs and his judgment around people, and he does what he can to minimize stressful situations, including isolation. (Tr. 41-42, 44.)

Plaintiff challenges the ALJ's assessment of his subjective symptom testimony. The ALJ discounted plaintiff's subjective symptom testimony because: (1) his level of activity was inconsistent with his allegations; (2) his conditions improved with treatment; and (3) his statements were inconsistent with his medical records.

**1. Daily Activities**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not,

however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted plaintiff's subjective symptom testimony because he can drive, prepare simple meals, do his own laundry, do chores, and manage money. (Tr. 19, citing Tr. 427-28.) Here, the ALJ did not explain how plaintiff's ability to perform these daily activities undermines his testimony. (Tr. 19.) The ALJ did not find that plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Because the ALJ did not connect these activities to any symptom or the degree of any symptom alleged by plaintiff, this fails to provide a specific, clear and convincing basis upon which to discount plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

**2. Treatment**

An ALJ may discount a claimant's mental health symptom testimony because symptoms improved with treatment. *Niemi v. Saul,* 829 F. App'x 831, 832-33 (9th Cir. 2020) (holding that the ALJ did not err in discounting the claimant's symptom testimony and noting that the ALJ observed that the claimant's "mental health challenges appeared to improve with counselling and

medication”). However, discounting a claimant’s mental health symptom testimony based on evidence of improvement can still result in harmful error.

For example, in *Garrison*, an ALJ discredited the claimant’s symptom testimony “mainly on the ground that the record showed that [her] condition had improved due to medication at a few points between April 2007 and June 2009.” 759 F.3d at 1016-17. The Ninth Circuit held that the ALJ’s rationale was not a clear and convincing reason to discount the claimant’s testimony that “since April 2007, she had suffered panic attacks, ‘a lot of ups and downs and depression,’ severe anxiety, occasional suicidal thoughts, and bouts of paranoia and mania—symptoms that caused major difficulties with social functioning and responding to such stresses as shopping unaccompanied for groceries.” *Id.* at 1017. In so holding, the court observed that it had previously “emphasized [that] while discussing mental health issues, it is error to reject a claimant’s testimony merely because symptoms wax and wane in the course of treatment.” *Id.* The court explained that “[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.” *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

The reports of plaintiff’s symptoms getting better over time on which the ALJ relied predated the plaintiff’s alleged onset date. (Tr. 19.) In his decision, the ALJ notes that after plaintiff’s suicide attempt in 2014, plaintiff reports doing well during his combination of treatment, including medication and therapy. (Tr. 19.) Specifically, from 2014 to 2015, plaintiff reportedly felt better, felt motivated, engaged in treatment, got a bus pass, started working

temporary jobs through an agency, his marital relationship had improved, and he went backpacking in Idaho with friends. (Tr. 19, citing Tr. 600, 604, 616, 620, 623, 626-29, 632, 638, 694). The ALJ also relied on "sparse" reports from 2016 to 2017 that plaintiff was doing well on medication overall and working part-time delivering pizza. (Tr. 19, citing Tr. 392, 399, 402) Based on those instances of improvement, the ALJ concluded that the plaintiff has the "capability of performing the range of simple work identified in the residual functional capacity." (Tr. 19.)

Consideration of the whole record, however, reveals that the ALJ finding improvement in during that time is not supported by substantial evidence. That is, the ALJ fails to reconcile plaintiff's improvements with working conditions after the cited improvements, which includes accommodations to help manage and minimize plaintiff's symptoms. (Tr. 39.) According to plaintiff, he was having trouble concentrating for long periods, using technical skills, anxiety that kept him scattered and fearful, avoidant of stressful situations, needing reminders to take care of his personal hygiene, no longer doing his own shopping and cooking, and only going shopping accompanied by his wife. (Tr. 263-65.) While working only part-time delivering pizzas from 2016 to 2019, the accommodations given to plaintiff meant that he was not expected to perform the full range of work that his coworkers did, such as speaking with customers and cooking pizzas; plaintiff only organized delivery and delivered pizzas with no mention of needing to occasionally speak with anyone in order to do this, an assumption the ALJ makes in his decision. (Tr. 40, 20.) After the pizzeria closed in 2019, plaintiff began working at U-Haul, where again he was provided with accommodations due to his inability to perform the job as expected. (Tr. 40-41, 344.) According to plaintiff and employer, for about two years he was given

accommodations, including working no more than 20 hours per week, being able to call off multiple times a month due to flare ups in his mental state, frequent breaks in order to decompensate and adjust, and was assigned to be a lot attendant only because he was unable to provide customer service, work with computers, and had to frequently inquire about common daily tasks. (Tr. 41, 344.) The ALJ made little effort to reconcile plaintiff's period of improvement with his need for extensive accommodations in order to compensate. That constitutes error. *Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression make some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.")

**3. Inconsistency with Medical Records**

The ALJ discounted plaintiff's subjective symptom testimony based on inconsistencies with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

The basis for those inconsistencies appears to be plaintiff's reports of doing well on medication and his appearances on mental status exams, where he "consistently presents with good eye contact and cooperative, pleasant behavior on examinations." (Tr. 21, citing Tr. 346, 350, 360, 407, 426, 433, 448, 584, 587, 605, 647, 656, 666, 670, 685, 694, 698.) The Ninth Circuit has rejected reliance on similar observations in the context of evaluating mental health impairments. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the

claimant's] reported symptoms of depression and social anxiety"). Thus, the ALJ's reasoning is not supported by substantial evidence and does not provide a clear and convincing basis to discount plaintiff's testimony.

**B. *The ALJ Erred in Evaluating the Medical Opinions of Drs. Roman and Nguyen***

Plaintiff argues that the ALJ erred in evaluating the medical opinions of Dr. Roman, who saw plaintiff for a psychodiagnostic assessment, and of Dr. Nguyen, plaintiff's primary care physician.

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.") Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how they considered those secondary medical factors unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").[3] *Id.* Each doctor's opinion is addressed below.

**1. Dr. Pamela Roman**

Plaintiff argues that the ALJ improperly found the opinion of Dr. Roman unpersuasive. Dr. Roman conducted a psychodiagnostic evaluation of plaintiff on July 29, 2019, including a clinical interview, record review, and extensive testing. (Tr. 426, showing testing including Information & Orientation and Mental Control subtests from the Wechsler Memory Scale,

---

[3] Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Revised (WMS-R); Digit Span subtest from the Wechsler Adult Intelligence Scale, 4th ed., (WAIS-IV); and Calculation subtest–Woodcock-Johnson III, Tests of Achievement.)

Dr. Roman's report discussed plaintiff's history with both physical and emotional abuse starting at a young age, a suicide attempt accompanied by hospitalization in 2014, long periods of self-imposed isolation due to anxiety, mood swings, and bouts of irritability, with recurrent instances of major depression. (Tr. 424-25, 569.) During her interview, Dr. Roman stated that plaintiff reported "his life has been diminished and he is no longer able to work full-time," and "he has intense emotions of depression and anxiety and dislikes social situations." (Tr. 425.) Plaintiff also reported feeling sad, hopeless, constantly anxious, suicidal thoughts once or twice a month without specific intent or plan, trouble making decisions, and may even suffer mild auditory hallucinations when not on medication. (Tr. 425.) Dr. Roman observed that plaintiff presented appropriately, although agitated, and his thought processes were logical and coherent. (Tr. 425.)

On testing, plaintiff was cooperative with logical and coherent thought processes, acted appropriately throughout the testing, and was fully oriented. (Tr. 426.) The results of the WMS-R showed no significant difficulties, with Dr. Roman noting that he performed "perfectly" on the Information & Orientation items – he was fully oriented, scored five out of six on the Mental Control items with only a single error in adding three to numbers but did so within the allotted time. (Tr. 426.) Plaintiff could also recall one out of three unrelated items after three minutes, could spell "world" correctly forwards and backwards, could name the first president of the United States and states bordering Oregon. (Tr. 426.) Plaintiff also had poor abstracting abilities. (Tr. 426.) On the WAIS-IV, plaintiff was in the low average range. (Tr. 426). And finally, for the

Calculation subtest–Woodcock-Johnson III test, plaintiff could do simple addition, subtraction, multiplication, and use fractions. (Tr. 426.)

Based on Dr. Roman's interview, record review, and testing, she diagnosed bipolar disorder and generalized anxiety disorder. (Tr. 426-27.) Dr. Roman opined that while plaintiff could understand and remember simple instructions during the interview, he would be expected to have difficulty understanding and remembering more complicated instructions consistently and reliably. Dr. Roman also noted that plaintiff is withdrawn and generally isolated except for with his wife and children, and he would not be expected to maintain attention and concentration throughout a normal workweek or workday without decompensating and having interpersonal difficulties. (Tr. 427.)

In the decision, the ALJ determined that Dr. Roman's opinion was persuasive regarding plaintiff being able to understand simple instructions but would have difficulties with anything more complex. (Tr. 20.) The ALJ, noting Dr. Roman's assessment regarding social interaction, limited plaintiff to "occasional social interaction" but declined to impose anything more since plaintiff exhibited "consistently cooperative, polite behavior during examinations and [has] consistently good eye contact." (Tr. 20.) However, the ALJ found unpersuasive Dr. Roman's assessment that plaintiff would have difficulty maintaining concentration and attention during a normal workday or workweek because it was based largely on plaintiff's subjective reports, was not supported by plaintiff's low average testing results, and was inconsistent with mostly normal concentration results in mental status examinations. (Tr. 20-21.) Those reasons, however, are insufficient explanations for discounting Dr. Roman's opinion.

First, as discussed above, plaintiff's appearance of having "consistently cooperative, polite behavior during examinations and [has] consistently good eye contact" is not a valid observation because it does not contradict plaintiff's symptoms. *See Ghanim*, 763 F.3d at 1164 (rejecting ALJ's reliance on the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety").

Second, the ALJ found Dr. Roman's opinion unpersuasive because it is based on plaintiff's subjective complaints. The Ninth Circuit has cautioned that rejecting physician's opinions based on "self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). "[A]lthough psychiatric evaluations often appear subjective when compared to evaluation in other medical fields, psychiatric diagnoses depend in part on the patient's self-report, as well as on the clinician's observations of the patient, because that is the nature of psychiatry." *Nathan B. v. Saul*, Case No. 2:18-cv-01408-SB, 2019 WL 4884223, at *8 (D. Or. Oct. 3, 2019) (internal quotation omitted). Here, Dr. Roman's opinion came from her clinical interview and extensive testing, which are "objective measures [that] cannot be discounted as a 'self-report.'" *Buck*, 869 F.3d at 1049. To bolster his reasoning, the ALJ also points to plaintiff being able to sustain working part-time as a pizza delivery driver and to his more complex work at U-Haul. However, that reasoning is flawed as Dr. Roman states plaintiff would "not be expected to maintain attention and concentration throughout a *normal* workweek and workday without decompensating and having interpersonal difficulties." (Tr. 427.) Plaintiff's work at both the pizzeria and U-Haul was part-

time with special accommodations and is not what could be considered a normal workday or workweek. The ALJ also points to plaintiff's work at U-Haul requiring more social interaction and more complex tasks, yet plaintiff's testimony and employer clearly stated that his work involves very little, if any, social interaction and does not involve anything remotely complex. (Tr. 21, 40-41, 344.)

Given the above, the ALJ unreasonably concluded that Dr. Roman's opinion is unsupported by her examination findings and is based on plaintiff's testimony. As a result, substantial evidence does not support the ALJ's finding that Dr. Roman's opinion was not persuasive.

**2. Dr. David Nguyen**

Plaintiff also argues that the ALJ erred in finding Dr. Nguyen's medical opinion unpersuasive. Dr. Nguyen has been seeing plaintiff once or twice a year since 2013 for medication management. (Tr. 376-415.) In his opinion, plaintiff would have difficulty working with others, he would miss two or more days of work per month due to flare ups of his mental health conditions, and his ability to interact with others was between moderately and markedly impaired. (Tr. 369-74.) The ALJ found Dr. Nguyen's assessment unpersuasive as it pertains to the marked social limitations, stating such a limitation is supported only by claimant's subject reports, making the limitation "inconsistent with the record as a whole." (Tr. 21.) As an example, the ALJ points to plaintiff's ability to work as a pizza delivery driver, which the ALJ believes shows an ability to "interact with others on at least an occasional level." (Tr. 21.) The ALJ also relies on plaintiff's ability to "consistently present[] with good eye contact and cooperative, pleasant behavior on examinations." (Tr. 21.)

These arguments are, however, nothing more than a repackaged version of the same rationale used to find Dr. Roman's opinion unpersuasive. As such, the court reaches the same conclusion here, that the ALJ's reasoning is not supported by substantial evidence.

**C. *The ALJ Erred in Discounting the Lay Testimony of Plaintiff's Mother and Employer***

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (holding that competent lay witness testimony "*cannot* be disregarded without comment" (emphasis in original)).

In addition to plaintiff's own subjective testimony, his mother and most recent employer submitted statements in support of his disability. (Tr. 295-304, 344.) Plaintiff argues that the ALJ erred by disregarding those lay witness statements without comment. (Pl's Br. 17, ECF 16.) The Commissioner attempts to counter plaintiff's argument on two grounds.

First, the Commissioner argues that the ALJ did consider the employer's statement but found that plaintiff's work at U-Haul exceeded the ALJ's proposed residual functional capacity. (Def's. Br. 14, ECF 17.) Specifically, the ALJ found that plaintiff's work at U-Haul is more complex than the RFC would allow, so plaintiff is expected to have a difficult time completing those tasks. (Tr. 19.) The ALJ also states that even though plaintiff struggles performing his part-time job at U-Haul, it "is not representative of his ability to perform simple, routine tasks with limited social interaction and adaptive limitations as outlined in the residual functional capacity." (Tr. 19.) However, this reasoning is unsupported. The ALJ once again cites to reports of plaintiff doing well on medication, yet as discussed above, doing well does not mean plaintiff no longer

suffers from his reported symptoms. Also, as noted by both plaintiff and his employer, plaintiff is limited to working only in the lot, does not do tasks involving computers, does not engage in customer service, does not work more than 20 hours per week, and calls out often when his mental conditions flare up. (Tr. 40-41, 344.)

Second, as it pertains to the plaintiff's mother, the Commissioner argues that the ALJ did not commit legal error because 20 C.F.R. § 404.1520c(d) does not require ALJs to articulate how they consider nonmedical source statements. (Def.'s Br. at 14.) The Commissioner is mistaken: "Although § 404.1520c(d) states [that] the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." *Joseph M. R. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (quoting 20 C.F.R. § 404.1520c(d)).

The Commissioner also argues that the ALJ did not err in failing to discuss the lay testimony from plaintiff's mother because she did not describe any limitations beyond those expressed by plaintiff. In the Commissioner's view, the ALJ's reasons for discounting plaintiff's testimony therefore apply with equal force to the lay testimony. Because the court has determined that the ALJ erred in rejecting plaintiff's testimony, this court concludes that the ALJ erred in rejecting the lay testimony of plaintiff's mother without comment. Therefore, the ALJ erred in failing to consider the lay witness statements.

\\\\\

\\\\\

**D. *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that an award for an immediate payment of benefits is appropriate because when his testimony, the lay witness statements from his mother and employer, and the medical opinions from Drs. Nguyen and Roman are properly credited, the vocational testimony elicited at the hearing establishes that he is unable to sustain competitive employment. The court agrees and finds that plaintiff satisfies the credit-as-true standard.

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony and the medical opinions of Drs. Nguyen and Roman.

Plaintiff testified that he suffers from anxiety and bipolar disorder and explained how he mitigates stressful situations through isolation and extensive accommodations at his part-time work to cope and also requires reminders for daily tasks. The statements submitted by plaintiff's mother and employer are consistent with this testimony. Likewise, Drs. Nguyen and Roman each opined that plaintiff's impairments would require the plaintiff to miss multiple days of work a week and that plaintiff would not be expected to sustain a normal workday or workweek. (Tr. 370, 427.) At the hearing, the vocational expert testified that occasional redirection during the workday to stay on task would exceed what would be allowed and that having to miss or be entirely isolated from others at work would also exceed what would be allowed. (Tr. 50-51.) When that evidence is credited as true, the ALJ would be required to find plaintiff disabled and remand for further proceedings would serve no useful purpose.

Given that evidence, the court has no "serious doubt" as to whether plaintiff is seriously disabled. *See Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that, where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled"). Accordingly, the court exercises its discretion to credit the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits from the amended onset date of January 1, 2016.

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

**CONCLUSION**

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate award of benefits.

ORDERED on May 15, 2023

JEFF ARMISTEAD
United States Magistrate Judge